CLERK'S OFFICE U.S. DIST. COURT
AT HARRISONBURG, VA
FILED

1/3/2018

JULIA C. DUDLEY, CLERK
BY: S/J.Vasquez
    DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | |
|---|---|
| **CARY HIXSON**, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Civil Action No. 5:18-cv-00001 |
| **KATHERINE RAYNES,** | ) |
| a nurse and employee of | ) |
| Southern Health Partners, Inc., | ) |
| | ) |
| and | ) |
| | ) |
| **JANELLE SEEKFORD,** | ) JURY TRIAL DEMANDED |
| a nurse and employee of | ) |
| Southern Health Partners, Inc., | ) |
| | ) |
| Defendants. | ) |

## COMPLAINT FOR MONETARY DAMAGES

Plaintiff, Cary Hixson, files this Complaint in accordance with 42 U.S.C. §
1983 as the statutory vehicle to vindicate his rights under the Eighth and
Fourteenth Amendments of the U.S. Constitution, and pursuant to the
Constitution and laws of the Commonwealth of Virginia.

## INTRODUCTION

1.

When it comes to treating inmates that have medically diagnosed (and life-
threatening) illnesses, the staff of Harrisonburg-Rockingham Regional Jail

1

("HRRJ") are simply inhumane. For example, Plaintiff, Mr. Hixson, is a medically diagnosed diabetic. And at the time he entered HRRJ, medical staff knew that Mr. Hixson was diabetic because he told them, and HRRJ staff verified his status as a diabetic through medical records. Despite this knowledge, Defendants Nurses Katherine "Laney" Raynes and Janelle Seekford never—not once—provided Mr. Hixson with medically ordered and required insulin, or prescribed medication to help control Mr. Hixson's serious diabetes. As a result, Mr. Hixson suffered excruciating pain throughout his feet, hands and legs, as well as experienced blurred vision, ringing in his ears, on top of his vital organs slowly depreciating in functionality—Defendants knew all this because Mr. Hixson told them about his experience. In a desperate measure to assuage the negative effects of his untreated diabetes while at HRRJ, ***Hixson would run in place furiously in his cell for 15 to 30 minutes at a times trying to lower his blood sugar levels because he didn't receive his medication.***

2.

In fact, for months, Defendants monitored Mr. Hixson's fasting blood sugar levels by drawing his blood in the morning—and despite Defendants seeing that Mr. Hixson suffered from escalating, skyrocketing blood sugar levels in the continuous, debilitating range of **160 to 407**, Defendants refused to provide Mr. Hixson with insulin or prescribe medication to control Mr. Hixson's medically

diagnosed problem. Making matters way worse, Raynes and Seekford threatened Mr. Hixson with solitary confinement if he continued to complain about not receiving his insulin or prescribed medication to treat his medically diagnosed health condition.

3.

While Mr. Hixson was incarcerated at HRRJ, Defendants showed deliberate indifference to Mr. Hixson's diagnosed and serious medical need for his prescribed insulin and other medication, which Plaintiff had been taking to treat his medically diagnosed, serious diabetes. The host of evils perpetrated on Mr. Hixson also include medical malpractice regarding his ignored and desperate need for diabetic medication. By refusing to treat Mr. Hixson's known, serious medical condition, Defendants breached all duties of care owed to Mr. Hixson regarding his health and wellbeing, utterly neglected Mr. Hixson's safety, and acted with reckless indifference to the consequences that their actions would cause Mr. Hixson serious injury.

## JURISDICTION AND VENUE

4.

Jurisdiction is proper under 28 U.S.C. §§ 1331 and 1343(a)(4), under 42 U.S.C. § 1983, and on the supplemental jurisdiction of this Court to adjudicate claims arising under state law pursuant to 28 U.S.C. § 1367(a). Venue is proper

under 28 U.S.C. § 1391(b) and L.R. 2 (b) because (1) a substantial part of the events and omissions giving rise to Mr. Hixson's claims occurred within this District and Division and (2) Defendants reside and transact business in this District and Division.

## ADMINISTRATIVE EXHAUSTION

5.

Mr. Hixson is not incarcerated and thus does not have to show that administrative remedies related to his claims have been exhausted.

## PARTIES

### A. Cary Hixson, Plaintiff

6.

Plaintiff Mr. Cary Hixson is aged 53, and currently not incarcerated. The facts pertaining to his claims are outlined in the Relevant Facts Section and Counts below.

### B. SHP Nurse Katherine Raynes, Defendant

7.

Defendants Nurse Katherine Raynes ("Nurse Raynes"), at all relevant times, was a nurse employed by Southern Health Partners, Inc. ("SHP") to provide medical care to the inmates of HRRJ.

8.

At all times relevant to this Complaint, Nurse Raynes was responsible for ensuring that she knew all controlling law within the Fourth Circuit regarding deliberate indifference to medical needs, breaching duties of care, complete neglect of inmate safety, and willful and wanton negligent conduct, including the Fourth Circuit Court of Appeals' case law with respect to under-medicating inmates and flat-out denying demonstrably required prescription medication to inmates under Nurse Raynes's care.

9.

At all times relevant to this Complaint, Nurse Raynes was acting under the color of state and federal laws, she was responsible for knowing and acting in accordance with all policies, procedures, orders, special orders, general orders, guidelines and regulations in effect at HRRJ, while upholding her duties of care to inmates at HRRJ.

**C. SHP Nurse Janelle Seekford, Defendant**

10.

Defendant Nurse Janelle Seekford ("Nurse Seekford"), at all relevant times, was a nurse employed by Southern Health Partners, Inc. ("SHP") to provide medical care to the inmates of HRRJ.

11.

At all times relevant to this Complaint, Nurse Seekford was responsible for ensuring that she knew all controlling law within the Fourth Circuit regarding deliberate indifference to medical needs, breaching duties of care, complete neglect of inmate safety, and willful and wanton negligent conduct, including the Fourth Circuit Court of Appeals' case law with respect to under-medicating inmates and flat-out denying demonstrably required prescription medication to inmates under Nurse Seekford's care.

12.

At all times relevant to this Complaint, Nurse Seekford was acting under the color of state and federal laws, she was responsible for knowing and acting in accordance with all policies, procedures, orders, special orders, general orders, guidelines and regulations in effect at HRRJ, while upholding her duties of care to inmates at HRRJ.

## **RELEVANT FACTS**

### **A. Facts related to Mr. Hixson's Blood Sugar readings and Defendants' failure to provide him with his diabetic medication**

13.

At all relevant times to this Complaint, Nurse Raynes was responsible for providing medical care to the inmates of HRRJ, including Mr. Hixson.

14.

At all relevant times to this Complaint, Nurse Seekford was responsible for providing medical care to the inmates of HRRJ, including Mr. Hixson.

15.

Upon entering HRRJ, SHP personnel performed a medical screening of Mr. Hixson and inquired as to whether Mr. Hixson was taking prescribed medication, and Mr. Hixson told SHP personnel that he suffered from medically diagnosed diabetes and as a result, he must take medication (including insulin) to treat his serious diabetes.

16.

After Mr. Hixson told SHP personnel that he suffered from diabetes, and that he had been prescribed insulin medication, Mr. Hixson provided SHP nurses with information as to where to acquire his medical records from previous medical providers.

17.

During Mr. Hixson's entire stay at HRRJ, nurses Nurse Raynes and Nurse Seekford knew Mr. Hixson required diabetes medication because nurses Nurse Raynes and Nurse Seekford reviewed Mr. Hixson's medical records, which demonstrated that while at HRRJ, Mr. Hixson required prescribed diabetes medication to treat his condition and also required a diabetic diet.

18.

While Mr. Hixson was incarcerated at HRRJ, SHP nurses actually recorded in Mr. Hixson's records that Mr. Hixson was a Type 1 Diabetic.

19.

Nurse Raynes and Nurse Seekford took daily fasting blood sugar readings from Mr. Hixson, and both read and recorded Hixson's blood sugar levels on a SHP form called the Blood Sugar Flow Sheet.

20.

The Blood Sugar Flow Sheet states at the top of the page that: blood sugar tests check for conditions such as hypoglycemia (low blood sugar), pre-diabetes, and diabetes; common tests include a **fasting blood sugar** which is no eating or drinking for at least 8 hours prior to testing.

21.

The physician order/instructions at the top of Mr. Hixson's Blood Sugar Flow Sheet indicate that the SHP nurses, including Nurse Raynes and Nurse Seekford, were to check Mr. Hixson's Fasting Blood Sugar levels in the morning.

22.

Combined, Nurses Nurse Raynes and Nurse Seekford took blood sugar readings from Mr. Hixson **150 times.**

23.

Of the 150 times Nurses Nurse Raynes and Nurse Seekford took blood sugar readings from Mr. Hixson, 139 of those readings were recorded as taken at 04:30am.

24.

The Blood Sugar Flow Sheet states at the top of the page that: **blood sugar tests less than 110 is considered normal**.

25.

Of the 150 times that Nurses Nurse Raynes and Nurse Seekford took blood sugar readings, Mr. Hixson's blood sugar test read **less than 110 mg/dL only three (3) times**, meaning that Mr. Hixson's blood sugar test read over 110 mg/DL **one hundred forty-seven (147) times** as not normal.

26.

Mr. Hixson's blood sugar levels were measured as being **over 180** mg/dL on **41 occasions**, and actually measured as high as **407 mg/dL**.

27.

Nurse Raynes had the authority to ensure medication was ordered to treat Mr. Hixson's medically diagnosed diabetes.

28.

Nurse Seekford had the authority to ensure medication was ordered to treat Mr. Hixson's medically diagnosed diabetes.

29.

Nurse Raynes had the authority to provide Mr. Hixson with some type of medication to treat Mr. Hixson's medically diagnosed diabetes.

30.

Nurse Seekford had the authority to provide Mr. Hixson with some type of medication to treat Mr. Hixson's medically diagnosed diabetes.

31.

Despite Mr. Hixson's severely high blood sugar levels, Nurse Raynes refused to provide Mr. Hixson with insulin to treat his medically diagnosed diabetes.

32.

Despite Mr. Hixson's severely high blood sugar levels, Nurse Seekford refused to provide Mr. Hixson with insulin to treat his medically diagnosed diabetes.

33.

Despite Mr. Hixson's severely high blood sugar levels, Nurse Raynes refused to order Mr. Hixson insulin to treat his medically diagnosed diabetes.

34.

Despite Mr. Hixson's severely high blood sugar levels, Nurse Seekford refused to order Mr. Hixson insulin to treat his medically diagnosed diabetes.

35.

Despite Mr. Hixson's severely high blood sugar levels, Nurse Raynes refused to order Mr. Hixson any medication to treat his medically diagnosed diabetes.

36.

Despite Mr. Hixson's severely high blood sugar levels, Nurse Seekford refused to order Mr. Hixson any medication to treat his medically diagnosed diabetes.

37.

Despite Mr. Hixson's severely high blood sugar levels, Nurse Raynes refused to provide Mr. Hixson with any medication that treats diabetes.

38.

Despite Mr. Hixson's severely high blood sugar levels, Nurse Seekford refused to provide Mr. Hixson with any medication that treats diabetes.

39.

As a professional nurse, Nurse Raynes knew the serious, life-threatening risks of untreated diabetes and high blood sugar levels because she was trained to

know those risks prior to reading and understanding that Mr. Hixson suffered from untreated diabetes and high blood sugar levels.

40.

As a professional nurse, Nurse Seekford knew the serious, life-threatening risks of untreated diabetes and high blood sugar levels because she was trained to know those risks prior to reading and understanding that Mr. Hixson suffered from untreated diabetes and high blood sugar levels.

41.

As a professional nurse, Nurse Raynes knew the risks to Mr. Hixson in particular if his diabetes went untreated because she was trained to know those risks prior to reading and understanding that Mr. Hixson suffered from untreated diabetes and high blood sugar levels.

42.

As a professional nurse, Nurse Seekford knew the risks to Mr. Hixson in particular if his diabetes went untreated because she was trained to know those risks prior to reading and understanding that Mr. Hixson suffered from untreated diabetes and high blood sugar levels.

43.

As a medical professional, Nurse Raynes knew that extended periods of high blood sugar levels could cause excruciating pain, as well as blurred vision,

ringing in the ears, and severe discomfort because Nurse Raynes received training about the negative physical effects that occur from untreated diabetes, such as pain, ringing of the ears, blurred vision, and discomfort.

44.

As a medical professional, Nurse Seekford knew that extended periods of high blood sugar levels could cause excruciating pain, as well as blurred vision, ringing in the ears, and severe discomfort because Nurse Seekford received training about the negative physical effects that occur from untreated diabetes, such as pain, ringing of the ears, blurred vision, and discomfort.

45.

As a medical professional, Nurse Raynes knew that extended periods of high blood sugar levels cause damage to internal organs because Nurse Raynes received training with respect to internal organ damage caused by untreated diabetes.

46.

As a medical professional, Nurse Seekford knew that extended periods of high blood sugar levels cause damage to internal organs because Nurse Seekford received training with respect to internal organ damage caused by untreated diabetes.

47.

During Mr. Hixson's stay at HRRJ, Nurse Raynes repeatedly refused to provide Mr. Hixson with his required, prescribed diabetes medications, including insulin, despite the fact that Nurse Raynes had the authority to ensure Mr. Hixson was ordered the prescription medication.

48.

During Mr. Hixson's stay at HRRJ, Nurse Seekford repeatedly refused to provide Mr. Hixson with his required, prescribed diabetes medications, including insulin, despite the fact that Nurse Seekford had the authority to ensure Mr. Hixson was ordered the prescription medication.

49.

By her repeated refusal to provide Mr. Hixson with any medication to treat his diabetes (including Mr. Hixson's required, prescribed diabetes medication), Nurse Raynes allowed Mr. Hixson's diabetes to go untreated.

50.

By her repeated refusal to provide Mr. Hixson with any medication to treat his diabetes (including Mr. Hixson's required, prescribed diabetes medication), Nurse Seekford allowed Mr. Hixson's diabetes to go untreated.

51.

As a result of Nurse Raynes and Nurse Seekford's repeated refusal to provide Mr. Hixson with any medication to treat his diabetes (including his required, prescribed diabetes medication such as insulin), Mr. Hixson suffered severe, excruciating pain throughout his feet, hands and legs, as well as experiencing blurred vision and ringing in his ears for months.

52.

Mr. Hixson's bodily functions were severely impaired due to Nurse Raynes's refusal to provide Mr. Hixson with insulin or any medication to treat Hixson's diabetic condition.

53.

Mr. Hixson's bodily functions were severely impaired due to Nurse Seekford's refusal to provide Mr. Hixson with insulin or any medication to treat Hixson's diabetic condition.

54.

Nurse Raynes refused to request that Dr. Moran, the HRRJ physician, provide Mr. Hixson with any medication to treat Mr. Hixson's diabetes.

55.

Nurse Seekford refused to request that Dr. Moran, the HRRJ physician, provide Mr. Hixson with any medication to treat Mr. Hixson's diabetes.

56.

On many occasions, Mr. Hixson made complaints to Nurse Raynes and Nurse Seekford about the failure of Dr. Moran, nurses Nurse Raynes and Nurse Seekford, and SHP to provide him with required insulin to treat his disability.

57.

Mr. Hixson told nurses Nurse Raynes and Nurse Seekford, about the physical ailments he was suffering due to Nurse Raynes and Nurse Seekford's refusal to provide Mr. Hixson with any medication to treat his diabetes.

58.

Mr. Hixson's complaints of severe pain and discomfort due to his untreated diabetes were directly received by Nurse Raynes.

59.

Mr. Hixson's complaints of severe pain and discomfort due to his untreated diabetes were directly received by Nurse Seekford.

60.

As a result of being made aware of Mr. Hixson's complaints, Nurse Raynes knew that Mr. Hixson was regularly experiencing excruciating pain throughout his feet, hands and legs, as well as experiencing blurred vision and ringing in his ears for months.

61.

As a result of being made aware of Mr. Hixson's complaints, Nurse Seekford knew that Mr. Hixson was regularly experiencing excruciating pain throughout his feet, hands and legs, as well as experiencing blurred vision and ringing in his ears for months.

62.

In response to Mr. Hixson's complaints about not receiving any medication to treat his diabetes, Nurse Raynes threatened to place Mr. Hixson in segregation if he continued to request medication to treat his diabetes.

63.

Nurse Seekford was made aware that Nurse Raynes threatened to place Mr. Hixson in segregation if he continued to request medication to treat his diabetes.

64.

Nurse Raynes was not disciplined for threatening to place Mr. Hixson in segregation if he continued to request medication to treat his diabetes.

65.

Nurse Seekford approved Nurse Raynes's threats to place Mr. Hixson in segregation if he continued to request medication to treat his diabetes.

66.

In fear for his physical wellbeing and his life, Mr. Hixson continued to complain that he needed to receive his insulin to treat his diabetes.

67.

In response to Hixson's continued complaints, nurses Nurse Raynes tried to have the deputies put Mr. Hixson in segregation to punish him for requesting treatment of his diagnosed, serious medical condition and disability. *After that*, and after having requested diabetic medication for months, Hixson stopped requesting medication in fear of his life.

68.

Nurse Seekford was made aware that Nurse Raynes tried to have deputies place Mr. Hixson in segregation for complaining that he was not being given medication to treat his diabetes.

69.

Nurse Raynes was not disciplined for trying to have deputies place Mr. Hixson in segregation for complaining that he was not being given medication to treat his diabetes.

70.

Nurse Seekford approved Nurse Raynes's attempts to have deputies place Mr. Hixson in segregation for complaining that he was not being given medication to treat his diabetes.

71.

As a result of Nurse Raynes's total failure and refusal to provide diabetic medication to Mr. Hixson, a known diabetic, Mr. Hixson was severely and seriously injured, was put in fear of death, suffered extreme pain throughout his feet, hands and legs, suffered prolonged blurred vision and ringing in his ears, suffered damage to his internal organs, and lives in fear of a shortened life span as a result of damage to his internal organs.

72.

As a result of Nurse Seekford's total failure and refusal to provide diabetic medication to Mr. Hixson, a known diabetic, Mr. Hixson was severely and seriously injured, was put in fear of death, suffered extreme pain throughout his feet, hands and legs, suffered prolonged blurred vision and ringing in his ears, suffered damage to his internal organs, and lives in fear of a shortened life span as a result of damage to his internal organs.

**COUNT I**
**VIOLATION OF MR. HIXSON'S EIGHTH AMENDMENT RIGHTS**
**PURSUANT TO 42 U.S.C § 1983**
(*Federal claim against Nurse Raynes and Nurse Seekford, in their individual capacities*)

73.

Plaintiff fully incorporates paragraphs 1 through 72, *and any paragraph this Court deems relevant*, as fully stated herein to support Plaintiff's Count I.

74.

Based on the incorporated paragraphs to support this Count I, Defendants Nurse Raynes and Nurse Seekford violated Mr. Hixson's right to be free from deliberate indifference to his known serious medical need for diabetic medication (prescription or otherwise) to treat his known, medically diagnosed condition of diabetes, and said right was clearly established at the time Defendants Nurse Raynes and Nurse Seekford deliberately failed to provide Mr. Hixson with any medication at all to deal with Mr. Hixson's known severe diabetic condition. Consequently, Mr. Hixson is entitled to all damages permissible under controlling law, as well as attorney fees and cost regarding this lawsuit.

**COUNT II**
**MEDICAL MALPRACTICE**
(*State claim against Nurse Raynes and Nurse Seekford, in their individual capacities*)

75.

Plaintiff fully incorporates paragraphs 1 through 72, *and any paragraph this Court deems relevant*, as full stated herein to support Plaintiff's Count II.

76.

Based on all the incorporated facts to support this Count II, as health care providers, by refusing to treat Mr. Hixson's known, serious medical condition, Defendants Raynes and Seekford breached all duties of care owed to Mr. Hixson regarding his health and wellbeing, utterly neglected Mr. Hixson's safety, and acted with reckless indifference to the consequences that their actions would cause Mr. Hixson serious injury. Mr. Hixson is entitled to all damages permissible under controlling law.

## COUNT III
## PUNITIVE DAMAGES
### (*Against all Defendants individually*)

**Based on the facts alleged in this complaint,** Plaintiff is entitled to punitive damages, under all applicable laws, because Defendants acted with a willful and conscience indifference to the laws that protect Mr. Hixson.

## COUNT IV
## ATTORNEY FEES

**Based on the facts alleged in this Complaint,** Mr. Hixson is entitled to attorney fees, under all applicable laws.

**WHEREFORE**, Mr. Hixson prays for a trial by jury of twelve and judgment against Defendants as follows:

(a) That process issue and service be had on each Defendant;

(b) That judgment be granted in favor of the Plaintiff against the Defendants, jointly and severally, for the injuries of Plaintiff;

(c) That Plaintiff recover compensatory damages including pain and suffering, lost income and future lost income, and other expenses in an amount to be determined at trial, including attorney fees;

(d) Plaintiff be awarded damages for his loss earnings and reduction in his earning capacity from Defendants;

(e) That Plaintiff recover costs of this litigation;

(f) That a jury trial be had on all issues so triable;

(g) Plaintiff have Judgment against Defendant for punitive damages; and

(h) That Plaintiff receives such other and further relief as the Court deems just and proper.

Respectfully submitted on this 3rd day of January 2018,

/s/ MARIO B. WILLIAMS
Mario B. Williams (VSB #91955)

**NEXUS CARIDADES ATTORNEYS, INC.**
44 Broad Street, NW, Suite 200
Atlanta, Georgia 30303
404-654-0288/703-935-2453 FAX
mwilliams@nexuscaridades.com
*Attorney for Plaintiff*