CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
FEB 09 2018
JULIA C. DUDLEY, CLERK
BY: /s/ 
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | |
|---|---|
| CARY HIXSON, | ) |
| Plaintiff, | ) Civil Action No. 5:17-cv-00032 |
| v. | ) |
| | ) By: Hon. Michael F. Urbanski |
| BRYAN HUTCHESON, et al. | ) Chief United States District Judge |
| Defendants. | ) |

## MEMORANDUM OPINION

Plaintiff Cary Hixson, an insulin-dependent diabetic, alleges he was denied insulin while incarcerated at Harrisonburg-Rockingham Regional Jail ("HRRJ"). Hixson's First Amended Complaint for Monetary Damages (the "FAC"), ECF No. 34, raises various claims against Defendants Bryan Hutcheson, Steven Shortell, Dr. Michael Moran (collectively with Hutcheson and Shortell, the "HRRJ Defendants"), Southern Health Partners, Inc. ("SHP"), and John Doe #1 and #2 ("Does," and collectively with the HRRJ Defendants and SHP, "Defendants").[1]

This matter comes before the court on the HRRJ Defendants' and SHP's Motions to Dismiss. ECF Nos. 37 & 53. For the reasons discussed below, the court will **GRANT in part** and **DENY in part** the Motions to Dismiss. The court will also sua sponte **CONSOLIDATE** this action with Hixson v. Raynes, 5:18-cv-00001-MFU.

---

[1] While Hixson does not identify Does in the FAC, Hixson's complaint in Hixson v. Raynes, 5:18-cv-00001-MFU, identifies Does as Katherine Raynes and Janelle Seekford. While the court sua sponte consolidates 5:18-cv-00001 with this action, in this opinion, the court will continue to refer to the two SHP nurses as Does.

## I. Allegations

Plaintiff Cary Hixson is a 53-year-old man who was, at all relevant times, diagnosed with insulin-dependent diabetes.[2] FAC ¶¶ 3, 32, 68. Hixson was incarcerated at HRRJ for six months. Id. ¶ 3. Hixson does not plead the exact dates during which he was incarcerated. Hixson is not currently incarcerated. Id.

Sheriff Bryan Hutcheson was the supervising operator of HRRJ, id. ¶ 4, while Shortell was the operator of HRRJ, id. ¶ 7. Dr. Moran was a medical doctor employed by HRRJ. Id. ¶ 109. Additionally, Dr. Moran was "working on behalf of the county" and was employed by Rockingham County "[f]rom at least August 1, 2016 through January 29, 2017." Id. ¶¶ 109, 111, 114. SHP is a regional health care provider that employs and contracts with medical care professionals to provide care to inmates at HRRJ. Id. ¶ 10. Does #1 and #2 ("Does") were nurses employed by SHP to provide medical care at HRRJ. Id. ¶ 11.

SHP was under contract to provide medical services at HRRJ. Id. ¶ 49. Prior to Hixson's incarceration at HRRJ, Hutcheson, Shortell, and SHP developed a policy that prohibited all staff, including medical staff, at HRRJ from providing medication, including insulin, to diabetics housed at HRRJ. Id. ¶¶ 28–29, 64. Hutcheson, Shortell, and Dr. Moran approved SHP's policy of not providing diabetic medication. Id. ¶¶ 66–67. These policies have led numerous inmates at HRRJ to be denied treatment. Id. ¶¶ 30–31.

Upon incarceration at HRRJ, Does, on behalf of SHP, performed a medical screening of Hixson. Id. ¶¶ 68, 75. Upon inquiry, Hixson informed Does that he was diagnosed with

---

[2] All facts herein are taken from the FAC, the allegations of which at this stage the court must take as true. See Cooper v. Pate, 378 U.S. 546, 546 (1964) (per curiam).

2

diabetes and needed to take medication, including insulin, to control his diabetes. Id. Does reviewed Hixson's medical files and confirmed he needed medication, including insulin, as well as a diabetic diet, to treat his diabetes. Id. ¶¶ 68, 77. Dr. Moran reviewed Hixson's medical files and knew that Hixson required treatment for his diabetes. Id. ¶ 117. Each defendant was aware on the first day of Hixson's incarceration that Hixson was diabetic. Id. ¶ 148.

As ordered by Dr. Moran, Does took Hixson's blood sugar levels daily a total of 150 times, each of which was recorded on an SHP form. Id. ¶¶ 79, 82, 120. While a blood-sugar level below 110 mg/dL is considered normal, Hixson's blood-sugar level read less than 110 mg/dL only 3 out of 150 times, over 180 mg/dL 41 times, and as high as 407 mg/dL.[3] Id. ¶¶ 84–86. Despite these high levels, and despite having the authority to do so, Does refused to provide Hixson with or order insulin or other necessary diabetic medication. Id. ¶¶ 89–92. Does did this despite knowing the risks to Hixson. Id. ¶ 94–96.

Hixson regularly complained about the pain he was in due to not receiving insulin, and Hutcheson, Shortell, and Moran directly received those complaints. Id. ¶¶ 42–43, 125. Hixson also complained to Does about the pain he was in. Id. ¶¶ 102–04. Instead of treating Hixson, however, Does threatened Hixson with solitary confinement, and asked HRRJ deputies to put Hixson in solitary confinement, because he continued to complain about not receiving proper treatment for his diabetes. Id. ¶¶ 33, 107.

Similarly, Dr. Moran reviewed Hixson's medical records and knew he needed insulin. Id. ¶¶ 117, 119. While Dr. Moran instructed the staff to serve Hixson a diabetic meal and

---

[3] "mg/dL" is an abbreviation for milligrams per deciliter. See Scinto v. Stansberry, 841 F.3d 219, 227 (4th Cir. 2016).

personally reviewed Hixson's elevated blood-sugar levels, he refused to provide Hixson with insulin or other diabetes medication. Id. ¶¶ 118–24. Dr. Moran refused treatment despite knowing the risks of failing to provide Hixson with insulin. Id. ¶¶ 127–29.

Because he was not treated at HRRJ, Hixson suffered severe, prolonged pain throughout his feet, hand, and legs, suffered from blurred vision and ringing in his ears for his entire stay at HRRJ, and now suffers from organ damage and shortened life expectancy. Id. ¶ 46.

Hixson filed suit against Defendants. The FAC contains nine counts. Count I, pled against Dr. Moran and Does in their individual capacities, alleges Section 1983 claims based on a violations of Hixson's Eighth Amendment rights. Count II, pled against Hutcheson and Shortell in their individual capacities, alleges supervisory liability arising out of the same Section 1983 claim in Count I. Count III, pled against the HRRJ Defendants in their official capacities, alleges a violation of the ADA. Similarly, Count IV, also pled against the HRRJ Defendants in their official capacities, alleges a violation of the Rehabilitation Act. Count V, pled against Hutcheson and Shortell in their individual capacities, alleges state-law gross negligence. Count VI, pled against Dr. Moran, SHP, and Does, alleges state-law medical malpractice. Count VII, pled against SHP, alleges state-law respondeat superior liability. Count VIII, pled against all Defendants, seeks punitive damages. Finally, Count IX seeks attorneys' fees against unspecified parties.

## II. Consolidation

When "actions before the court involve a common question of law or fact," Federal Rule of Civil Procedure 42 allows the court to "consolidate the actions." Fed. R. Civ. P.

4

42(a)(2). Consolidation is a "managerial device" that "makes possible the streamlined processing of groups of cases, often obviating the need for multiple lawsuits and trials." 8 Moore's Federal Practice § 42.10[1][a]. The court has wide discretion to consolidate actions. A/S J. Ludwig Mowinckles Rederi v. Tidewater Constr. Co., 559 F.2d 928, 933 (4th Cir. 1977). That discretion extends to consolidating actions sua sponte. 8 Moore's Federal Practice § 42.10[2][a]–[b]; see also Beach Mart, Inc. v. L & L Wings, Inc., Nos. 2:11-CV-44-F & 2:14-CV-52-F, 2014 WL 4635450, at *1 (E.D.N.C. Sept. 15, 2014) (consolidating cases sua sponte).

> When exercising its discretion to consolidate, the court must consider:
>
> whether the specific risks of prejudice and possible confusion were overborne by the risk of inconsistent adjudications of common factual and legal issues, the burden on parties, witnesses and available judicial resources posed by multiple lawsuits, the length of time required to conclude multiple suits as against a single one, and the relative expense to all concerned of the single-trial, multiple-trial alternatives.

Arnold v. E. Air Lines, Inc., 681 F.2d 186, 193 (4th Cir. 1982); see also Antoine v. Amick Farms, LLC, Civ Nos. ELH-16-2444 & ELH-16-2938, 2017 WL 68646, at *14 (D. Md. Jan. 6, 2017) (consolidating actions after considering "duplication of discovery" and "trial testimony," "conserv[ation] [of] judicial resources, . . . reduc[tion] [of] expenses associated with trial," and the "inconvenience to witnesses for both sides").

On January 3, 2018, Hixson filed Hixson v. Raynes, 5:18-cv-00001-MFU, in this court. The complaint in Raynes (the "Raynes Complaint" or "Raynes Compl."), Complaint, 5:18-cv-00001-MFU, ECF No. 1, brings claims against Katherine Raynes and Janelle Seekford, two nurses employed by SHP to provide medical care to inmates at HRRJ. Raynes Compl. ¶¶ 7, 10. The allegations in the Raynes Complaint mirror the allegations in the FAC.

5

Moreover, the claims against Raynes and Seekford—a Section 1983 claim, a state-law medical malpractice claim, and requests for punitive damages and attorneys' fees—happen to be the same claims brought against Does in the FAC. Compare id. at 20–21, with FAC 38–39, 44–45. It is clear from the face of the Raynes Complaint that Raynes and Seekford are, in fact, the Does named in the FAC. Instead of amending the FAC to identify Does, however, Hixson has filed a separate complaint.

The court now has before it two actions that involve the same ultimate sets of facts, law, and witnesses. Discovery and trial testimony in the two actions will almost assuredly be duplicative, as, at base, both the FAC and the Raynes Complaint involve the same underlying facts and, to a large extent, causes of action. Not only do the two actions "present a common question of either law or fact," Fed. R. Civ. P. 42(a), all or nearly all questions of law or fact are shared between the two actions.

On the one hand, because "the cases constitute mirror images of one another," the court finds that there is no risk of prejudice or confusion if the cases are consolidated. Certain Interested Underwriters Subscribing to Policy No. B1262P20017013 v. Am. Realty Advisors, Nos. 5:16-CV-940-FL & 5:17-CV-74-FL, 2017 WL 1331245, at *2 (E.D.N.C. Apr. 11, 2017). On the other hand, if the court does not consolidate the cases, there will exist a significant risk that the parties will be subject to inconsistent adjudication of the same issues, duplicative discovery (and costs incurred in discovery), and a waste of the judicial system's resources. See id. The court therefore finds that Hixson v. Raynes, 5:18-cv-00001-MFU, should be consolidated with this action for all purposes. See WCC Cable, Inc. v. G4S Tech.

LLC, No. 5:17-CV-00052, 2017 WL 6503142, at *4 (W.D. Va. Dec. 15, 2017) (consolidating actions).

### III. Motions to Dismiss

The HRRJ Defendants and SHP move to dismiss certain counts in the FAC under Federal Rule of Civil Procedure 12(b)(6). The HRRJ Defendants move to dismiss Counts III, IV, VI, and VIII as against the HRRJ Defendants. SHP moves to dismiss Counts VIII and IX as against SHP.

### A. Legal Standard

Rule 12(b)(6) permits a dismissal when a plaintiff fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain sufficient "facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). The complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." Id. at 555.

A court must construe factual allegations in the nonmoving party's favor and will treat them as true, but is "not so bound with respect to [a complaint's] legal conclusions." Dist. 28, United Mine Workers of Am., Inc. v. Wellmore Coal Corp., 609 F.2d 1083, 1085 (4th Cir. 1979). Indeed, a court will accept neither "legal conclusions drawn from the facts" nor "unwarranted inferences, unreasonable conclusions, or arguments." E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship, 213 F.3d 175, 180 (4th Cir. 2000). Further, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Only after a claim is stated adequately

7

may it then "be supported by showing any set of facts consistent with the allegations in the complaint." Twombly, 550 U.S. at 563.

### B. Counts III and IV: ADA and Rehabilitation Act

Counts III and IV of the FAC raise claims under Title II of the ADA and Section 504 of the Rehabilitation Act, respectively. See FAC ¶¶ 154–57. ADA and Rehabilitation Act claims are only available against public entities or employers; individuals may not be sued in their individual capacities under these statutes. See Baird ex rel. Baird v. Rose, 192 F.3d 462, 471 (4th Cir. 1999) (ADA Title II); Silvious v. RR Donnelley & Sons, No. 5:10CV00116, 2011 WL 643155, at *1 (W.D. Va. Feb. 20, 2011) ("It is well-established that individual employees are not subject to liability under the ADA, and that only employers may be held liable under this statute."); McNulty v. Bd. of Educ. of Calvert Cty., No. Civ.A. DKC 2003-2520, 2004 WL 1554401, at *6 (D. Md. July 8, 2004) (Rehabilitation Act Section 504).

Hixson pleads Counts III and IV against the HRRJ Defendants in their official capacities. The HRRJ Defendants move to dismiss Shortell and Dr. Moran, apparently claiming that they are being sued in the individual capacities. See Defs.' Mem. Supp. Mot. Dismiss ("HRRJ MTD Br."), ECF No. 38, at 3. The FAC belies this contention, however, as Hixson clearly pleads that Shortell and Dr. Moran are being sued in their official capacities. See FAC 40, 42. Nonetheless, as each HRRJ Defendant is being sued in his official capacity, the ADA and Rehabilitation Act claims against them "effectively would constitute claims against the state agency that employs" them. Williams v. Smith, No. 1:10CV501, 2010 WL 2816714, at *2 (M.D.N.C. July 15, 2010).

At oral argument, counsel for Hixson conceded that Counts III and IV are properly against HRRJ, not any of the HRRJ Defendants. The court will dismiss Counts III and IV without prejudice, and grant Hixson leave to amend the FAC so he can plead these counts against HRRJ, the proper defendant.

### C. Count VI: Medical Malpractice

Dr. Moran moves to dismiss Count VI, as against him, the medical malpractice claim, on sovereign-immunity grounds.[4] While Dr. Moran is correct that he is protected by sovereign immunity for ordinary negligence claims, he is not shielded for a gross negligence claim.

The doctrine of sovereign immunity generally protects the Commonwealth from claims of ordinary negligence asserted against it. See Coppage v. Mann, 906 F. Supp. 1025, 1047 (E.D. Va. 1995). As the Commonwealth "acts through its employees, the sovereign immunity doctrine extends to public employees, as well." Id. The Commonwealth has waived sovereign immunity "from negligence suits against the Commonwealth itself," but "it has explicitly retained 'the individual immunity of . . . public officers, their agents and employees from tort claims for damages." Id. (alteration in original) (quoting Va. Code Ann.

---

[4] It appears to the court that Dr. Moran's arguments would apply equally to the Section 1983 claims against him. Dr. Shortell spends much time establishing that he was acting under color of state law, the cornerstone of a Section 1983 claim. See Crosby v. City of Gastonia, 635 F.3d 634, 639 (4th Cir. 2011). Section 1983 claims for inadequate medical care require "that the defendant acted with 'deliberate indifference' to the right." Woodson v. City of Richmond, Va., 88 F. Supp. 3d 551, 576 (E.D. Va. 2015) (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)). "[N]egligence is not deliberate indifference." Id. Yet, Dr. Moran appears to argue that qualified immunity would only shield him from the negligence claims in the medical malpractice claim, and not the Section 1983 claim. See HRRJ MTD Br. 9 (The case law "supports sovereign immunity for Dr. Moran for the allegations of ordinary negligence/malpractice contained in Count VI."). Even if Dr. Moran did claim qualified immunity for the Section 1983 claims, however, the same arguments that lead the court to reject his qualified immunity arguments on medical malpractice apply with equal force to the Section 1983 claims.

9

§ 8.01-195.3). "[A]ll independent contractors," however, "are excluded from that protection." Atkinson v. Sachno, 261 Va. 278, 284, 541 S.E.2d 902, 905 (2001).

The Supreme Court of Virginia has established a four-factor "test to determine entitlement to immunity." Messina v. Burden, 228 Va. 301, 313, 321 S.E.2d 657, 663 (1984). The court must consider: "(1) the nature of the function performed by the employee; (2) the extent of the state's interest and involvement in the function; (3) the degree of control and direction exercised by the state over the employee; and (4) whether the act complained of involved the use of judgment and discretion." Id. (citing James v. Jane, 221 Va. 43, 53, 267 S.E.2d 108, 113 (1980)). The Supreme Court of Virginia has held that physicians at public health clinics are shielded by sovereign immunity, see Lohr v. Larsen, 246 Va. 81, 88, 431 S.E.2d 642, 646 (1993), and federal courts have extended that protection to prison physicians, see Coppage, 906 F. Supp. at 1048. Dr. Moran therefore concludes that "he is immune from liability for acts of ordinary negligence." HRRJ MTD Br. 10.

### 1. Dr. Moran's Employment

Hixson first responds that while he pled that Dr. Moran was an employee of HRRJ, "the degree of control that Rockingham County actually had over Moran cannot be known without discovery." Resp. Defs.' Mot. Dismiss ("HRRJ MTD Opp."), ECF No. 43, at 20. Hixson therefore asks the court for discovery into Dr. Moran's actual employer "before any determination of immunity [is] made." Id.

Hixson's argument misconstrues that standards applicable on a Rule 12(b)(6). As Hixson recognizes, the "court must accept factual 'allegations of [Hixson's] Complaint . . . as true.'" Id. at 5 (quoting Gardner v. Toilet Goods Ass'n, 387 U.S. 167, 172 (1967)); see also

Iqbal, 556 U.S. at 678. And Hixson does not hesitate to flag every time he wants the court to consider his allegations as true. See, e.g., HRRJ MTD Opp. 7 ("Considered True Facts at this Litigation Stage"), id. at 8 ("Precedent established . . . , as applied to the considered-true facts at this litigation stage, demonstrate plausible claims of liability against [the HRRJ Defendants]."), id. at 14 ("Defendants excluded Hixson from medical care to treat his diabetes, as evidenced by the considered-true fact that . . . defendants refused to provide Hixson with diabetic medication . . . .").

Problematically for Hixson, he clearly pleads that Dr. Moran "at all relevant times, was the medical doctor at HRRJ," FAC ¶ 14, and "was acting under the color of state and federal laws, and . . . was responsible for knowing and acting in accordance with all policies [and] procedures . . . of HRRJ," id. ¶ 16. Further, Hixson pleads that Dr. Moran was "working on behalf of the county" and was employed by Rockingham County "[f]rom at least August 1, 2016 through January 29, 2017." Id. ¶¶ 109, 111, 114. Hixson cannot predicate his opposition to HRRJ's Motion to Dismiss on certain pled facts yet beg the court to disregard other pled facts. The court will consider as true Hixson's allegations that Dr. Moran was an employee of HRRJ. To the extent that Hixson pleads medical malpractice sounding in ordinary negligence, those claims are barred by sovereign immunity.

### 2. Gross Negligence

Hixson's second argument—that he pleads medical malpractice sounding in gross negligence—is more persuasive. Hixson claims that he "pled an abundance of facts that Moran is liable to Hixson for medical malpractice under the gross negligence standard." HRRJ MTD Opp. 21.

"The doctrine of sovereign immunity does not shield state employees from liability for acts or omissions constituting gross negligence." Gedrich v. Fairfax Cty. Dep't of Family Servs., 282 F. Supp. 2d 439, 474 (E.D. Va. 2003); see also James v. Jane, 221 Va. 43, 53, 282 S.E.2d 864, 869 (1980) ("A state employee who acts wantonly, or in a culpable or grossly negligent manner, is not protected.").

Moreover, a claim for gross negligence under Virginia law requires a lesser showing of recklessness than a claim for deliberate indifference under the Eighth and Fourteenth Amendments. See Reid v. Newton, No. 3:13-CV-572, 2014 WL 1493569, at *8 n.11 (E.D. Va. Apr. 14, 2014) (collecting cases); accord Coppage, 906 F. Supp. at 1049 ("Unlike deliberate indifference, gross negligence does not require a juror to find that Dr. Mann subjectively knew of a substantial risk; it is enough that Dr. Mann should have been aware of that risk."). At least one court in this Circuit has held that "[d]eliberate indifference and gross negligence are closely associated because conduct constituting gross negligence creates a rebuttable presumption of deliberate indifference." Jensen v. Conrad, 570 F. Supp. 114, 122 (D.S.C. 1983). Similarly, the facts required to prove gross negligence are substantially similar to those required to prove deliberate indifference, and the Virginia Supreme Court has "applied the doctrine of collateral estoppel to any prior determination of either." Chaplin v. Maas, No. 5:12CV30028, 2013 WL 1249173, at *9 (citing Whitley v. Commonwealth, 260 Va. 482, 488–90, 583 S.E.2d 296, 299–302 (2000)), report and recommendation adopted, No. 5:12cv30028, 2013 WL 1249146 (W.D. Va. Mar. 26, 2013). With these similarities in mind, at the motion to dismiss stage, the court will assume that if Hixson has pled a cognizable deliberate indifference claim, he has also pled a cognizable gross negligence claim.

Controlling case law makes clear that he has. In Scinto v. Stansberry, 841 F.3d 219 (4th Cir. 2016), cert. denied sub nom., Phillip v. Scinto, --- U.S. ----, 138 S. Ct. 447 (2017), the Fourth Circuit reversed summary judgment on facts less egregious than Hixson pleads here. Scinto was an incarcerated, insulin-dependent diabetic who was "prescribed two units of insulin when his blood sugar was between 141 and 150 milligrams ('mg') per deciliter ('dL'), four units when his blood sugar was between 151 and 200mg/dL, and so on." Id. at 227. Scinto requested supplemental insulin because his blood sugar was 200mg/dL. Id. Both Scinto and defendants agreed that Scinto was angry—Scinto claiming it was "at least in part because his blood sugar was high," and the doctor claiming that Scinto engaged in "threatening behavior." Id. at 227–28. It was undisputed that the doctor "terminated [Scinto's] visit to the medical clinic and declined to provide him with insulin." Id. at 227. Scinto's evidence suggested that there were other incidents in which he was not provided with adequate doses of insulin. Id. at 228.

Scinto then examined the facts under the two-prong test promulgated by Farmer v. Brennan, 511 U.S. 825 (1994), for determining if an Eighth Amendment violation based on conditions of confinement exists. "First, Farmer's 'objective' prong requires plaintiffs to demonstrate that 'the depravation alleged [was], objectively, sufficiently serious.'" Id. at 225 (alteration in original) (quoting Farmer, 511 U.S. at 834). In medical cases, "the Farmer test requires plaintiffs to demonstrate officials' deliberate indifference to a 'serious' medical need that has either 'been diagnosed by a physician as mandating treatment . . . or is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" Id. (alteration in original) (quoting Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008)).

13

Second, Farmer's subjective prong requires plaintiffs to "show that prison officials acted with a 'sufficiently culpable state of mind.'" Id. (quoting Farmer, 511 U.S. at 834). "In conditions of confinement cases, the requisite state of mind is deliberate indifference," which requires plaintiffs to "show that 'the official kn[ew] of and disregard[ed] an excessive risk to inmate health or safety.'" Id. (alterations in original) (quoting Farmer, 511 U.S. at 837). Where an inmate claims that a prison official was deliberately indifferent to medical needs, "Farmer's subjective prong requires proof of the official's 'actual subjective knowledge of both the inmate's serious medical condition and the excessive risk posed by [the official's] action or inaction.'" Id. at 226 (alteration in original) (quoting Jackson v. Lightsey, 775 F.3d 170, 178 (4th Cir. 2014)).

The Fourth Circuit found that Scinto had established both prongs of the Farmer test. On the objective prong, Scinto demonstrated that "he suffer[ed] from a serious medical condition: insulin-dependent diabetes," which was treated by the prison physician. Id. at 228. He also raised a genuine issue of material fact on "whether the deprivation of his prescribed insulin created serious injury or a substantial risk of serious injury" through his "deposition testimony and medical records showing an increase in his blood sugar" during the time in which the prison physician "was assigned to treat [Scinto's] diabetes." Id. 228–29.

On the subjective prong, the Fourth Circuit found that the prison physician "was aware of facts—[Scinto's] diabetes and his blood sugar value at the time of his request for insulin—giving rise to an inference that failing to provide insulin could result, at least, in a substantial risk of harm." Id. at 229. Moreover, the Fourth Circuit held that "a jury is capable

of understanding, unaided, the risks of failing to provide insulin to a diabetic and of a trained doctor's denial of a diabetic's known need for insulin." Id. at 230.

Similarly, in Jones v. Texas Department of Criminal Justice, --- F.3d ----, 2018 WL 580615 (5th Cir. Jan. 29, 2018) (per curiam), the Fifth Circuit recently reversed denial of a motion for preliminary injunction related to an inmate's diabetes. Jones, a diabetic, "was prescribed a special diet due to his diabetes." Id. at *1. During a routine lockdown, the food-service manager "discontinued his prescribed diet and replaced it with a 'sugar based diet.'" Id. Jones alleged that "his 'blood sugar levels registered above 500[mg/dL],'" but prison officials would not consider his grievances. Id. Jones claimed that "the deprivation of his prescribed diet forced him to inject more insulin to lower his blood-sugar level, thus exposing him to a risk of serious physical injuries in the event his blood-sugar level drops too rapidly." Id.

The magistrate judge denied the motion for preliminary injunction without holding an evidentiary hearing. The Fifth Circuit reversed. The Fifth Circuit found that "Jones's pleadings allege a pattern of knowing interferences with prescribed medical care for his diabetes, despite his multiple complaints and his official grievance, which were all essentially ignored." Id. at *2. Further, Jones "allege[d] that he ha[d] already suffered a stroke and a heart attack as a result of his medication condition," and was "liable to suffer additional strokes, heart attacks, and other life-threatening diabetic complications" if not treated. Id. "These allegations establish[ed] a sufficient risk of irreparable harm in the absence of injunctive relief." Id.

With these cases in mind, the court finds that Hixson has adequately pled deliberate indifference and gross negligence. On the objective prong of Farmer, Hixson pleads that he had medically diagnosed diabetes at all relevant times, and suffered severe injuries because of Dr. Moran's failure to treat that condition. On the subjective prong of Farmer, Hixson pleads that Dr. Moran knew that Hixson was diabetic because he reviewed Hixson's medical records. Additionally, Hixson pleads that Dr. Moran personally reviewed Hixson's elevated blood sugar levels, yet refused to provide him with insulin. This "giv[es] rise to an inference that failing to provide insulin could result, at least, in a substantial risk of harm." Scinto, 841 F.3d at 229. Under Scinto, Hixson's pleadings are sufficient to plead gross negligence against Dr. Moran.

### IV. Count VIII: Punitive Damages

Both Hutcheson and SHP move to dismiss Hixson's claim for punitive damages. Hutcheson argues that, insofar as he is being sued in his official capacity as sheriff, punitive damages are not available against him. Hutcheson is correct. The Supreme Court has held that "a municipality is immune from punitive damages under 42 U.S.C. § 1983." City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 271 (1981). "Because a suit against a governmental officer in his official capacity is the same, for purposes of recovery, as a suit against the governmental entity itself," Hixson is barred from seeking punitive damages against Hutcheson in his official capacity. Harrison v. Chalmers, 551 F. Supp. 2d 432, 437 (M.D.N.C. 2008).

Hixson recognizes this, but "expressly maintains his request for punitive damages against all individuals in their individual capacities, for both federal and state claims." Mem.

16

Law Supp. SHP's Mot. Dismiss, ECF No. 54, at 2 n.1. Moreover, it is clear from the face of the FAC that Hixson only seeks punitive damages against Defendants in their individual capacities. See FAC 45 (pleading Count VIII "Against all Defendants individually"). Because Hixson does not seek punitive damages from any party in their official capacity, Hutcheson's motion to dismiss Count VIII is moot.

SHP argues it is not liable for punitive damages "because punitive damages are not available in ordinary negligence claims, which is all [Hixson] has raised against SHP." SHP MTD 2. SHP claims that Hixson only alleges that "SHP violated a duty of care and that SHP is responsible for [Does'] alleged breach of a duty of care." Id. at 2–3.

Virginia law disfavors the imposition of punitive damages, which "should be awarded only in cases of the most egregious conduct." Owens-Corning Fiberglas Corp. v. Watson, 243 Va. 128, 144, 413 S.E.2d 630, 639 (1992) (quoting Philip Morris Inc. v. Emerson, 235 Va. 380, 407, 268 S.E.2d 268, 283 (1988)). Virginia law requires a showing of at least willful and wanton negligence to impose punitive damages. See id. at 144, 413 S.E.2d at 640.

"Willful and wanton negligence is defined as 'acting consciously in disregard of another person's rights or acting with reckless indifference to the consequences, with the defendant aware, from his knowledge of existing circumstances and conditions, that his conduct probably would cause injury to another.'" Id. (quoting Griffin v. Shively, 227 Va. 317, 321, 315 S.E.2d 210, 213 (1984)); see also Alfonso v. Robinson, 257 Va. 540, 545, 514 S.E.2d 615, 618 (1999) (same). This definition nearly mirrors the subjective prong of the Farmer test, which requires a plaintiff provide "proof of the official's 'actual subjective knowledge of both the inmate's serious medication condition and the excessive risk posed

17

by [the official's] action or inaction.'" Scinto, 841 F.3d at 226 (quoting Jackson v. Lightsey, 775 F.3d 170, 178 (4th Cir. 2014)). Accordingly, if the court finds that if Hixson has sufficiently pled the subjective prong of the Farmer test against SHP, then the court will deny SHP's motion to dismiss punitive damages at this stage.

For much the same reason as the court found that Dr. Moran was amenable to a malpractice claim because Hixson has pled gross negligence, the court finds that SHP is amenable to punitive damages because Hixson has pled willful and wanton conduct. It is well-established that the knowledge and actions of an agent are imputed to the principal. See Liberty Univ., Inc. v. Citizens Ins. Co. of Am., 792 F.3d 520, 529 (4th Cir. 2015). Hixson's allegations against Does are the much the same as his allegations against Dr. Moran. Hixson was medically diagnosed with diabetes during all relevant times, which Hixson alleges that Does knew. Does also knew that Hixson's blood-sugar levels mandated administration of insulin, but Does refused to Hixson with provide insulin. Hixson's failure to receive insulin caused him to suffered serious injuries. Just as similar allegations were sufficient to plead deliberate indifference against Dr. Moran, the allegations against Does are sufficient to plead deliberate indifference, and therefore willful and wanton conduct, against Does. See Scinto, 841 F.3d at 229. As Does' actions are imputed to SHP, the punitive damages claim against SHP cannot be dismissed at this time.

### V. Count IX: Attorneys' Fees

Finally, SHP moves to dismiss Count IX insofar as that count seeks attorneys' fees from SHP. "Under the so-called 'American rule,' a prevailing party generally cannot recover attorneys' fees from the losing party." Ulloa v. QSP, Inc., 271 Va. 72, 81, 624 S.E.2d 43, 49

(2006). Hixson fails to identify any exception to the American rule that would justify awarding attorneys' fees against SHP. The court finds that SHP cannot be liable for any attorneys' fees Hixson incurs.

## VI. Leave to Amend

The court will dismiss Counts III and IV without prejudice so Hixson can file an amended complaint naming the proper party. When filing an amended complaint, the court reminds Hixson's counsel of its obligations under Federal Rule of Civil Procedure 11. At oral argument, Hixson's counsel strained to explain the current factual basis behind the allegations Defendants had a "policy of refusing to prescribe diabetic medication (including insulin)." FAC ¶ 39. Frankly, Hixson's counsel's proffered explanation strained credulity. The court also notes that, at oral argument, HRRJ's counsel represented that all policies have been produced to Hixson in discovery. Hixson may have enough material produced in discovery to support or disclaim his current allegations of a policy precluding administration of insulin to diabetic inmates.

## VII. Conclusion

Hixson's allegations are sufficient to deny most of the HRRJ Defendants' and SHP's motions to dismiss. The court will **GRANT** without prejudice the motions to dismiss the ADA and Rehabilitation Act claims, **GRANT** with prejudice Dr. Moran's motion to dismiss the medical malpractice claim, but only to the extent it seeks damages for simple negligence, **GRANT** SHP's motion to dismiss the claim for attorneys' fees against SHP, and otherwise **DENY** the motions to dismiss. The court will also sua sponte **CONSOLIDATE** filed

19

Hixson v. Raynes, 5:18-cv-00001-MFU, with this action. The court grants Hixson leave to file an amended complaint within 14 days.

Entered: 02-08-2018

/s/ Michael F. Urbanski

Michael F. Urbanski
Chief United States District Judge